IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 25-cr-00063-SKC-11

UNITED STATES OF AMERICA,

Plaintiff,

v.

11. KEVIN ALEXANDER RUIZ-PEREZ,

Defendant.

---

**PLEA AGREEMENT**

---

The United States of America (the government), by and through Garreth Winstead, Deputy United States Attorney for the District of Colorado, and Talia Bucci, Assistant United States Attorney, and the defendant, Kevin Alexander Ruiz-Perez, personally and by counsel, David Lindsey, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

## I. AGREEMENT

### A. Defendant's Agreement:

The defendant agrees to

(1) plead guilty to Count 24 of the Second Superseding Indictment charging a violation of Attempt to Illegally Traffic firearms, in violation of 18 U.S.C. § 933(a)(1) and (3);

(2) waive certain appellate and collateral attack rights, as explained in detail below;

(3) agree not to contest forfeiture as more fully described below.



Court Exhibit

1

**B. Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). The government agrees to move to dismiss Counts 5, 13, 15, and 26 of the Second Superseding Indictment against this defendant. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment. The parties understand that this agreement is not binding on the Court.

The government also agrees to recommend a sentence at the low end of the guidelines as ultimately calculated by the Court. The parties understand that this agreement is not binding on the Court.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

If the defendant engages in conduct which implicates USSG § § 3C1.1 cmt. N.4 between the guilty plea and sentencing in this case, in addition to any other consequences, the government will be released from its obligations under the plea agreement, and the defendant will not thereby have any right to withdraw from the plea agreement.

**C. Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange

for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum sentence provided in the statute[s] of conviction;

(2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 28; or

(3) the government appeals the sentence imposed.

If the first criterion applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

The United States agrees not to argue a procedural bar to a prosecutorial misconduct claim raised in a § 2255 petition based on the failure of the defendant to raise that issue on direct appeal.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district

court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

**D. Forfeiture of Assets:**

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, 18 U.S.C. § 924(d), and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to: a Glock model G39 .45 caliber pistol, purchased by undercover agents on February 4, 2025; a Beretta model 92FS 9mm caliber pistol, and a Walther model PDP 9mm caliber pistol with a high-capacity magazine, purchased by undercover agents on February 11, 2025; a Glock model 22 .40 caliber pistol, a Glock model 17 9mm caliber pistol, a Glock model 27 .40 caliber pistol, and a Sig Sauer model P365 9mm pistol, purchased by undercover agents on February 14, 2025; a Taurus model G3C 9mm pistol, a Girsan model MC 1911 10mm pistol, and a Taurus model GX4 9mm pistol which was reported stolen, purchased by undercover agents on February 20, 2025; an ATI MIL-Sport AR-style 5.56mm pistol, a Glock model 19 9mm pistol, a Polymer

80 privately manufactured 9mm pistol with no serial number, a Glock model 34 9mm pistol which had been reported stolen, a Smith & Wesson M&P 40 .40 caliber pistol, a Frontier Armory LW-15 AR-style 5.56mm rifle, and a Glock model 26 9mm pistol with an attached machinegun conversion device which made the pistol fully automatic, purchased by undercover agents on February 27, 2025; a Taurus model PT111 G2 9mm pistol, a Smith & Wesson M&P9 9mm pistol, a Magnum Research Desert Eagle 9mm pistol, and a Sig Sauer P229 .40 caliber pistol, purchased by undercover agents on March 26, 2025. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames. The defendant further agrees to the forfeiture of any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

## II. ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of the charges are as follows:

**Count 24: 18 U.S.C. § 933(a)(1) and (3) - attempt**

*First*: That the defendant intended to ship, transport, transfer, cause to be transported or dispose of a firearm to another person in or otherwise affecting interstate commerce;

*Second*: That the defendant knew or had reasonable cause to believe that the use, carrying or possession of the firearm by the other person (recipient) would constitute a felony; and

*Third*: That the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime.

## III. STATUTORY MAXIMUM SENTENCE

The maximum sentences for a violation of Count 24 of the Second Superseding Indictment are: not more than 15 years' imprisonment; a maximum term of supervised release of 3 years; a maximum fine of $250,000; and a $100 special assessment fee.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States, or confined indefinitely if there is no country to which the defendant may be deported, denied future admission into the United States, and/or to be denied citizenship.

## V. STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true:

**In Late 2024, Special Agents with the ATF began an investigation into violence, drugs, and guns in an apartment complex in the Denver Metro Area.**

**An ATF confidential informant ("CI") contacted Luis Aguilera-Pericaguan ("Aguilera"), who stated that he knew individuals in the apartment complex with access to guns and drugs, and he agreed to introduce those individuals to the CI and the CI's associates (undercover agents).**

**On February 14, 2025, Aguilera came to the undercover location with Jonathan Medina to complete a sale of firearms and controlled substances. Medina brought four firearms and approximately 30 grams of tusi. Laboratory testing confirmed that the tusi contained ketamine and MDMA. After negotiations, Medina sold all of the firearms and tusi to the UCs, and Aguilera received a fee for facilitating the transaction.**

**On February 20, 2025, Aguilera and Medina again came to the undercover location to complete a sale of firearms and controlled substances. Medina brought three firearms and approximately 238 grams of tusi. Laboratory testing confirmed that the tusi contained ketamine and MDMA. After negotiations, Medina sold all of the firearms and tusi to the UCs, and Aguilera received a fee for facilitating the transaction.**

**On February 27, 2025, Aguilera and Medina again came to the undercover location to complete a sale of firearms. Medina brought seven firearms. The firearms were an ATI MIL-Sport AR-style 5.56mm pistol, a Glock model 19 9mm pistol, a Polymer 80 privately manufactured 9mm pistol with no serial number, a Glock model 34 9mm pistol which had been reported stolen, a Smith & Wesson M&P 40 .40 caliber pistol, a Frontier Armory LW-15 AR-style 5.56mm rifle, and a Glock model 26 9mm pistol with an attached machinegun conversion device which made the pistol fully automatic, which was discussed during the negotiations. During the negotiations, Medina called the defendant in order to negotiate the price of the ATI pistol, which belonged to the defendant. After negotiations, Medina sold all of the firearms to the UCs, and Aguilera received a fee for facilitating the transaction.**

**On March 26, 2025, Medina came to the undercover location with the defendant. They came to sell firearms and controlled substances. The defendant said that he was a tusi cook, and had cooked the tusi that Medina had previously sold to the UCs during**

**previous deals.[1] Medina brought four firearms: a Taurus model PT111 G2 9mm pistol, a Smith & Wesson M&P9 9mm pistol, a Magnum Research Desert Eagle 9mm pistol, and a Sig Sauer P229 .40 caliber pistol. Two of the firearms belonged to the defendant. The defendant brought tusi: one package of approximately 140 grams that was laboratory tested and confirmed to contain ketamine, MDMA, and methamphetamine. During negotiations, the UCs discussed that they were buying the firearms to traffic them to Mexico. After the sale, both Medina and the defendant left, and later returned to the undercover location with another batch of tusi they had "cooked." They sold this tusi to the UCs. It was approximately 112 grams and was confirmed through laboratory testing to contain ketamine and MDMA.**

**The firearms sold to undercover agents were all tested and functioned as designed; and those firearms with serial numbers had crossed state lines before they were sold to the UCs. The defendant attempted to transfer, and transferred the firearms to the undercover agents having reason to believe that the undercover agents were trafficking the firearms to Mexico without a license, which use and carrying of the firearms would constitute a violation of 18 U.S.C. §922(a)(1)(A).**

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified

---

[1] For the statements in this sentence, the defendant admits that he made these statements, but the defendant asserts that the statements are not true. The defendant asserts that he was merely trying to engender confidence and to delay in order to allow time for a second delivery.

during the sentencing process, affect the estimate below.

a) Under Section 2K2.1, the base offense level is 20.

b) The defendant receives a 2-level enhancement for the number of firearms.

c) The government's position is that a 5-level enhancement applies under section (b)(5)(C)(i)(III). The defendant reserves his right to object to this enhancement.

d) The government's position is that a 4-level enhancement applies under section (b)(6)(A) or (B). The defendant reserves his right to object to this enhancement.

e) The adjusted offense level based on the government's calculations is 31.

f) The defendant should receive a downward adjustment of 3-levels for acceptance of responsibility. The resulting total offense level based on the government's calculations is 28.

g) The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category I.

h) The career offender/criminal livelihood/armed career criminal adjustments do not apply.

i) The advisory guideline range resulting from the government's calculations is 78-97 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 78 months (bottom of Category I) to 175 months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction. As noted above, the defendant reserves his right to object to some of the government's calculations.

j) Pursuant to guideline § 5E1.2, assuming the government's estimated offense level above is correct, the fine range for this offense would be $25,000 to $250,000, plus applicable interest and penalties.

k) Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term shall be not more than 3 years.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in

the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 1/15/26 Kevin Ruiz
Kevin Alexander Ruiz-Perez
Defendant

Date: 1/15/26
David Lindsey
Attorney for Defendant

Date: 1/15/26
For: Garreth Winstead
Talia Bucci
Assistant U.S. Attorney